No. 17,503.

WESTERN SURETY COMPANY *v.* MAY MERCANTILE ASSOCIATION.
(283 P. [2d] 959)

Decided May 16, 1955.

548

Mr. Frank M. Evans, for plaintiff in error.

Mr. Walter J. Predovich, Mr. A. T. Stewart, for defendant in error.

*En Banc.*

Mr. Chief Justice Alter delivered the opinion of the Court.

May Mercantile Association, a Colorado corporation, brought an action against Western Surety Company, a corporation, seeking to recover judgment on a "Blanket Position Bond" indemnifying plaintiff against any loss of money or other property through fraudulent or dishonest acts of its employees. The cause was tried to the court, at the conclusion of which judgment was entered in favor of plaintiff and against defendant. Defendant brings the cause to this Court by writ of error seeking a reversal of the judgment.

We will herein refer to the parties as plaintiff and defendant as they appeared in the trial court.

It appears from the record that the May Mercantile Company was a corporation engaged principally in the sale of groceries and meats in Pueblo. Its board of "trustees" held monthly meetings, at which detailed reports were made by its manager and board of trustees concerning the financial condition of the corporation. It would appear from the record that the stockholders of the corporation held semi-annual meetings, at which detailed reports as to plaintiff's financial condition also were made by the chairman of the board of trustees and its manager. Frank Zupancic became plaintiff's manager in 1946 or 1947 and continued as such until the latter part of 1952. The manager had complete charge of plaintiff's mercantile business, and in its operation selected and employed whatever assistance was required. Prior to January 17, 1950, it would appear that the manager was

not under bond, and on January 17, 1950, the board of trustees procured a "Blanket Position Bond" effective from January 2, 1950, until cancelled, indemnifying plaintiff as aforesaid. Under this "Blanket Position Bond" all of plaintiff's employees were covered to the extent of $2500.00, and the store manager was covered to the amount of $5000.00.

It is established by the evidence that in the monthly reports made to the board of trustees there were two items with which we are here concerned, i.e., the amount of cash on deposit in the bank and the cash which the manager retained with which to conduct plaintiff's business. The deposit in the bank was verified by the board of trustees. The cash on hand was rarely, if ever, counted by the board, but full reliance was placed on plaintiff's manager as to the accuracy of the reported amount. According to the records, on September 24, 1950, the manager reported that he had cash on hand in the sum of $5207.66, and monthly thereafter, except for January 21, 1951, he reported cash on hand in excess of that amount, and at times in excess of $7000.00. On July 20, 1952, according to the record, the manager reported, among other things, cash on hand in the sum of $6072.39 and cash in the bank of $347.34. At the semi-annual stockholders meeting held on July 27, 1952, the cash on hand and in banks was reported to be $6419.73, which is the exact total of the amount reported on July 20, 1952. According to the minutes of the meeting of the board of trustees on August 1, 1952, some discussion arose as to the cash balances on hand, and, according to the record of that meeting, the manager stated that none of his figures given as to cash balances on hand were correct, and, as a matter of fact, at that date he had no cash on hand.

At a special meeting of the board of trustees held on August 9, 1952, a certified public accountant was engaged to make an audit of plaintiff's books and records, and on September 9, 1952, the report of the auditor was

filed covering transactions from July 1, 1946, to July 31, 1952. At the request of the board of trustees the certified public accountant, on October 6, 1953, segregated from his September 8, 1952, report, the cash transactions of the May Mercantile Company for the period of January 1, 1950, to July 31, 1952, inclusive, and, as a result of this examination, reported that there was a cash shortage for the period of January 1, 1952, to July 31, 1952, in the sum of $4602.95, for which plaintiff sought judgment.

In plaintiff's complaint it is alleged, and defendant in its answer admitted, that on January 17, 1950, defendant, for a valuable consideration, issued its "Blanket Position Bond" effective January 2, 1950, and in full force and effect until cancellation, which occurred on October 30, 1952. By its "Blanket Position Bond" plaintiff was indemnified against loss of money or other property that it might sustain by reason of any fraud or dishonest act of its manager. Plaintiff further alleges, and defendant denies, that between January 2, 1950, and July 31, 1952, it sustained a loss amounting to $4602.95 by reason of the fraudulent and dishonest acts of its manager.

At the trial there was introduced in evidence without objection the policy upon which the suit was brought; books containing the recorded minutes of plaintiff's board of trustees, and the semi-annual stockholders meeting, respectively, together with the report of a certified public accountant of examination of the cash transactions of the May Mercantile Company from July 1, 1946, to July 31, 1951, and a statement of income and expenses from January 1, 1950, to July 31, 1952, which latter statement disclosed, as we have said, a net cash shortage for that period amounting to $4602.95.

In defendant's "Statement of the Case" we find the following: "Plaintiff suffered a cash shortage in the amount of $4602.95 while the bond was in force and while Frank Zupancic was plaintiff's manager." Defendant's counsel, in his summary of argument, takes the position that notwithstanding the loss which plaintiff

suffered, it is not covered by the provisions of the policy under which defendant agreed to indemnify plaintiff.

 Frank Zupancic, who had been plaintiff's manager for many years prior to January, 1950, did not testify, and the evidence offered by plaintiff is undisputed. The only question necessary for our consideration is whether the evidence was sufficient to justify the trial court in determining that plaintiff had sustained a loss through any fraudulent or dishonest acts of its manager from January 2, 1950, to July 31, 1952. For our purposes an act to be "fraudulent or dishonest" under the provisions of a fidelity policy is one for a wrongful purpose and moral obliquity. Such an act must be one done in bad faith involving a breach of honesty to such an extent as to amount to official dishonesty and lack of moral character. The words "fraudulent or dishonest" are to be construed and interpreted in their usual and ordinary meaning. Here the fraudulent or dishonest act was a statement known by plaintiff's manager to be false at the time of making the same, and it was made for the purpose and with the design of influencing action thereon by plaintiff's board of trustees. The statements were made in bad faith and were a breach of honesty to such an extent as affected the official fidelity and moral character of plaintiff's manager, and the fact that a crime may have been committed is wholly immaterial in this action.

On undisputed evidence the trial court found:

"That the undisputed testimony shows that Frank Zupancic was employed as store manager during the term of the blanket position bond, and that as such manager, he had the sole and exclusive possession and control of all moneys, that he had the sole and exclusive control of the safe in which the moneys were kept, and that he kept all books and records of said store, and further, he had the only key to said store; that also as manager he attended the monthly meetings of the board of directors of the plaintiff corporation, and that at said

meetings, either the manager or trustees of the plaintiff gave monthly reports as to the amount of cash on hand and money in the bank; that said reports were based solely upon the statement given to the trustees by the manager or from the books as kept by the manager.

"That the amount of cash reported on hand varied from $5,000.00 to $7,000.00 per month up to and including the 20th of July, 1952, at which time a report was made of cash on hand in the amount of $6,072.39.

"That at a special meeting of the plaintiff corporation held on August 1, 1952, the manager, after having been instructed to purchase certain items of new equipment, informed the board of directors that he had no cash on hand.

"That at another special meeting, at which time Andy Sackman, the agent for the defendant herein, was present, the store manager, Frank Zupancic, made the statement that all of the reports of cash on hand that he had given to the trustees and the board of directors were false.

That thereafter an audit was made by Turner S. Underwood, a certified public accountant of forty years experience; that said audit disclosed a net cash shortage of the store manager and bookkeeper, Frank Zupancic, for the period from January 1, 1952, to July 31, 1952, in the amount of $4,602.95.

"AND THE COURT FURTHER FINDS, under the undisputed evidence, that the manager falsified his books and records as to cash on hand for a long period of time to the loss of the plaintiff corporation, and that said loss was within the purview and terms of the bond, and that said loss was caused by the false, fraudulent and dishonest acts of the store manager, Frank Zupancic.

"IT IS, THEREFORE, ORDERED BY THE COURT that judgment be entered in favor of the plaintiff in the amount as requested in the plaintiff's complaint of $4,602.95, together with Court costs, and interest from

December 23, 1952, up to and including June 8, 1954, in the amount of $397.30, making a total of $5,000.25."

There was ample competent evidence to support a finding that plaintiff sustained a loss by reason of the fraudulent or dishonest acts of its manager, and under the plain provisions of the "Blanket Position Bond" defendant is liable therefor.

The judgment is affirmed.